AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

APR 03 2019

David J. Bradley, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

the person and property Darrell Ray Blankenship

)
)
)
)
)

Case No. H19-0580M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

the person and property of Darrell Ray Blankenship, who is a flight attendant for United Arilines and will be transiting Houston, Texas.

located in the _____ Southern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 751(a) | Escape from the Custody of the Attorney General |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*approved for filing*

*AUA*

_____
*Applicant's signature*

Jessica I. Quintanilla, DUSM
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/3/19

_____
*Judge's signature*

City and state:  Houston, Texas

Peter Bray, United States Magistrate Judge
*Printed name and title*

## Attachment A

This warrant applies to information associated with the cellular phone 619-997-7524 and all electronic storage devices on the persons of Darrell Ray Blankenship.

## I. ITEMS TO BE SEIZED

Items to be seized are evidence, contraband, fruits or instrumentalities of violations, on the devices described below, regarding violations of 18 U.S.C § 1071, Harboring a Fugitive; 18 U.S.C. § 2(a), Aiding and Abetting; and 18 U.S.C. § 752, Instigating or Assisting Escape namely:

1. Records, documents and materials reflecting or relating to Escape from the Custody of the Attorney General including, but not limited to, any correspondence, any electronic communications, email communications, invoices, receipts, bills, form of payment, etc. found on the possessed electronic devices.

2. Keys and passwords/passcodes belonging to and/or evidence of the existence of and usage of any lockers, safe deposit boxes, storage facilities, computer and electronic equipment or other property that could be used to conceal participation in the escape.

3. Records or other items which show evidence of ownership or use of cellular phone including sales receipts, bills for internet access and hand written notes.

4. Any digital device used to facilitate the above-listed violations and forensic copies thereof.

5. With respect to any digital device containing evidence falling within the scope of foregoing search categories, records, documents, programs, applications or material or

1

Attachement A

evidence of the absence of the same, sufficient to show the actual user(s) of the digital device.

6. Any Social media pictures, videos, records, documents, and materials that relate to evidence to support his Harboring a Fugitive, Aiding and Abetting, Instigating or Assisting Escape namely, or any other unlawfully possessed device.

7. As used herein, the terms "records", "documents", "programs", "applications" and "materials" include records, documents, programs, applications and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

8. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; digital cameras; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, flash drives, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II.    **SEARCH PROCEDURE FOR DIGITAL DEVICES**

9. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

2

Attachement A

a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport tire device(s) to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 60 days from the date of execution of the warrant. If additional time is needed, the government may seek an extension of this period from the Court on or before the date by which the search was to have been completed.

b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

c. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and attempt to recover deleted, "hidden" or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

d. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

e. When searching a digital device pursuant to the specific protocols selected, the search teams shall make and retain notes regarding how the search was conducted pursuant to the selected protocols

3

Attachement A

f.     If the search team, while searching a digital device encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband of evidence of a crime.

g.     If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

h.     If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

i.     The government may retain a digital device itself, and/or entire forensic copies of it, until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest). After that period, the United States must obtain an order from the Court authorizing the continued retention of the device and/or forensic copies of it (or while an application for such an order is pending). Otherwise, the government must return the device and delete or destroy all forensic copies thereof.

j.     Notwithstanding the above, alter the completion of the search of the digital devices; the government shall not access digital data falling outside the scope of the items to be seized. Absent further order of the Court.

4

Attachement A

10. In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

    a.    Any digital device capable of being used to commit, further or store evidence of the evidence(s) listed above;

    b.    Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data ;

    c.    Any magnetic, electronic, or optical storage device capable of storing digital date;

    d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

    e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communications with the digital device;

    f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device: and

    g.    Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

11. The special procedures relating to the digital devices found in the warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

5

Attachement A

## AFFIDAVIT

## I.     INTRODUCTION

I, Jessica Quintanilla, being duly sworn, hereby state as follows:

1.     I make this affidavit in support of an application for a search and seizure warrant for the electronic devices on the persons of Darrell Ray Blankenship.

2.     I am a Deputy U.S. Marshal, and have been so employed since April 2010. My current assignment is to the Southern District of Texas, Houston Division, where my investigative focus is the apprehension of fugitives. I have received training in criminal investigations, interview and interrogations, and practical applications of conducting arrest and search warrants.

3.     As a federal criminal investigator, I am authorized to investigate violations of laws of the U.S. and to execute warrants issued under the authority of the U.S. The statements in this affidavit are based in part on information learned during this investigation and my experience and background as a Deputy U.S. Marshal. The information set forth in this affidavit is known to me as a result of my own involvement in this investigation. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Darrell Ray Blankenship has or is in communication with fugitive Frederick Darren BERG in addition to possible violations of 18 U.S.C. § 1071, Harboring a Fugitive; 18 U.S.C. § 2(a), Aiding and Abetting; and 18 U.S.C. § 752, Instigating or Assisting Escape.

## II.     PROBABLE CAUSE

5.     On February 9, 2012, fugitive Frederick Darren BERG (BERG) was sentenced to

1

Affidavit

the custody of the Bureau of Prisons (BOP), to be imprisoned for a total term of two-hundred sixteen (216) months, subsequent to entering a plea of guilty to Title 18, United States Code § 1343, Wire Fraud; Title 18, United States Code § 1957, Money Laundering; and Title 18, United States Code § 152(1), Bankruptcy Fraud – Asset concealment in the Western District of Washington case number 2:10-CR-00310.

6.      On December 6, 2017, BERG walked away from a minimum-security satellite facility located on the grounds of U.S. Prison Atwater, CA. At 1530, BERG was discovered missing during a routine count and put on escape status.

7.      On December 8, 2017, Magistrate Judge Barbara McAuliffe, Eastern District of California, issued an arrest warrant (1:17MJ00219) for Frederick Darren BERG based on a Criminal Complaint charging BERG with 18 USC 751(a) Escape from the Custody of the Attorney General.

8.      Early in the investigation the U.S. Marshals Service identified Darrell Ray Blankenship (DOB: 05/17/1960) as a persons of interest in this case. Blankenship and BERG dated prior to BERG's incarceration. They have been close friends for over 25 years. Blankenship is a flight attendant for United Airlines based out of the G.W. Bush Intercontinental Airport in Houston, although, his address of record is in Los Angeles, CA. Their relationship has been confirmed by the information listed below.

9.      According to BOP communication records, the earliest e-mail communication between BERG and Blankenship dates back to January 2011.  In the thirty (30) days prior to his escape, BERG and Blankenship communicated via email forty two (42) times. The last e-mail communication was on December 4, 2017, two days prior to BERG's escape. Blankenship last visited BERG on November 11, 2017.

2

Affidavit

10.     According to a Source of Information (SOI 1) in the BOP Second, BERG's family or his lover (Blankenship) had access to a private jet, owns land in Oregon (BERG's family resides in Oregon), frequents Chile, and was scheduled to travel to Chile on December 6, 2017, the day BERG escaped. SOI 1 also stated, BERG, who was expecting a furlough in February or March, (BOP was not going to approve this furlough) talked about being picked up by a private jet for this furlough.

11.     Bureau of Prisons records indicate that on October 08, 2017, Merv Whitson, a mutual friend of both BERG and Blankenship, also visited BERG. Deputy U.S. Marshals (DUSMs) interviewed Whitson in Seattle, Washington regarding this visit. Whitson told DUSMs the visit on October eighth was odd because both BERG and Blankenship kept asking Whitson to leave the room in order to talk in private. Whitson told DUSMs he tried to contact Blankenship via mobile phone on the day BERG escaped, to no avail. Later that day, Blankenship returned Whitson's call and stated he had bad cell phone reception. After Whitson inquired about BERG's escape, Blankenship responded, "We will probably never see BERG again." Whitson showed DUSMs text messages on his phone from Blankenship, which stated, "We will sit and talk about our boy Darren. Only in person and on a deserted Island...He's good." These photos of these messages are maintained in the DUSM's investigative file.

12.     During the course of the investigation, DUSM Altman learned Isaiah Martzen might have also assisted in the escape of BERG in addition to currently harboring, concealing, or assisting BERG in his flight from justice. On December 6, 2017, Martzen stayed at the Ramada Inn, 830 6th Avenue, San Diego, CA, on the evening BERG escaped. Further investigation revealed, Martzen checked into room 1110 on December 6, 2017 at 2131 hours. Martzen also listed Blankenship as a guest of the room. Martzen checked out on December 7, 2017 at 1251;

3

Affidavit

however, Blankenship rented room 1424 for the night of December 7, 2017 and listed no other guests. Both rooms were rented through Priceline.com and paid for by Blankenship. Martzen was a pilot; however, his license is currently expired.

13.     A subsequent review of Blankenship's Instagram account (mrhollywood50) revealed numerous posts, possibly at the Sheraton Grand Hotel in Rio de Janeiro, Brazil, during the first three weeks of 2018. Most posts were pictures taken by an unknown person (UNK) at a seating location for two e.g. a dining table for two. The UNK is never revealed. Further, a seemingly arbitrary picture showing the back of three men sitting on a lounge chair in the background was posted, one of the men had the same hairline as BERG (As of the end of January 2018, Blankenship's Instagram account is private). Additionally, at one point during this period there was a post from Blankenship to BERG's mother stating, "hello from Rio."

14.     Fifth, based upon information obtained from a warrant signed on February 5, 2018, there are several e-mails to and from Blankenship utilizing laflyguy@gmail.com from and to Jay at Aquirian Insight Tarot Card Readings (tarot@aquirianinsight.com). On the same date, laflyguy@gmail.com sent this message to tarot@aquirianinsight.com:

> "I have feelings for a man that I've known for 35 years. He and I
> have the same birthday 5/17.  We are very close and always say
> "love you" at the end of our text and emails. My feelings are more
> than friends. Do the angels have a message for me about him? I
> could see us together for a long time as a couple.  thanks Angels. !
> Darrell and Darren."

This message shows Blankenship asking a tarot card reader advice about his relationship with fugitive Frederick Darren BERG.

4

Affidavit

15.     Sixth, according to Julian Vreeburg, BERG's private pilot from 2005-2010, BERG and Blankenship were in a long-term relationship in addition to being partners in BERG's business, Meridian Investor Group. On January 2, 2018, Vreeburg told DUSM Altman, Blankenship received a large monetary settlement from United Airlines in 2010 and he subsequently gave that money to BERG to start the Meridian Investor Group.

16.     On May 16, 2018, the U.S. Marshals Service received a tip through USMS Wanted Website Email Tip Line. The tip read, "Darren Berg has now been in contact with his mother and another friend (Darrell Blankenship). This friend says they just heard from him for the first time this past weekend. I don't know if this helps or if it could help track him down - but I thought someone should know." The sender was anonymous; however, we were able to identify the tipster as Dana Dukelow. This name was cross-referenced with BERG's known associates and inmate visitation and communication logs. A match was found in the BOP's Inmate Center Report and is listed as a friend of BERG's.

17.     On June 29, 2018, DUSMs from the Central District of California interviewed Dana Dukelow regarding the anonymous tip he made on May 16, 2018. During this interview, Dukelow showed DUSMs an Instagram message from Blankenship (mrhollywood50), a person Dukelow knew from a prior relationship. The message was dated May 13, 2018 at 11:36 am, and stated, "…Just heard from Darren. He's fine. Where ever he is on the planet. He always had kind words about you. After he escaped from the camp. We have not heard from him until today, His mom and I are very relived hearing this news. Enjoy your life there amigo. Don't be a stranger. We have a past and a future. Happy Mother's Day too!! lol." Dukelow responded: "He should really turn himself in. Honestly-he stole peoples life. He deserved what he got. He should not be happy. And it wasn't a 'camp.'" Blankenship replied, "Ok. I now have your

5

Affidavit

perspective. I'll leave this conversation right here. I don't want to create any tension and didn't mean to raise your blood pressure. Backing out slowly." Dukelow did not have any information on the whereabouts of BERG.

18.     Based on the facts and circumstances detailed above, I believe fugitive Frederick BERG's longtime boyfriend, Darrell Ray Blankenship, has been in contact with fugitive Frederick Darren BERG. Additionally, I know from my training and experience that subjects involved in Harboring a Fugitive, Instigating or Assisting Escape, and Harboring a Fugitive, do so with the assistance of electronic communications devices.

## III.     REQUEST FOR EXECUTION OF WARRANT AT ANY TIME IN THE DAY OR NIGHT

19.     Furthermore, since Darrell Ray Blankenship is a flight attendant and his transit of Houston International Airport may be outside of the hours of 6:00 a.m. and 10:00 p.m., it is the affiant's belief that this is good cause to serve this warrant at any time in the day or night. As such, Affiant requests permission to serve this warrant at any time in the day or night.

6

Affidavit

## IV.    ITEM TO BE SEARCHED AND THINGS TO BE SEIZED

20.    Refer to Attachment A.

## V.    CONCLUSION

Based on the forgoing, I request that the Court issue the proposed search warrant.

Jessica Quintanilla,
Deputy U.S. Marshal

Subscribed and sworn to before me on    4/3    , 2019.

Peter Bray
United States Magistrate Judge

7

Affidavit